**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| HOWARD J. HAWKES FAMILY TRUST UTA DATED NOVEMBER 1, 1991, individually and on behalf of others similarly situated, | ) ) ) ) | 2:07-cv-00816-RCJ-LRL |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| QUALIFIED EXCHANGE SERVICES, INC., a California Corporation; SOUTHWEST EXCHANGE, INC., a Nevada Corporation; UBS FINANCIAL SERVICES, INC., a Delaware Corporation; CITIGROUP GLOBAL MARKETS, INC., FKA SALOMON SMITH BARNEY, INC., a Delaware Corporation; DONALD KAY MCGHAN, an individual; NIKKI POMEROY, an individual; J. DeMARIGNY, an individual; et al., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the Court on Defendant Citigroup's Motion to Dismiss (#26), and Sorrell Plaintiffs Motion for Leave to File an Amicus Curiae Brief (#46). Defendant UBS filed a Motion to Dismiss (#28) which it withdrew, and Request for Judicial Notice (#29). The Court has considered the motions and oral argument before the Court. Pursuant to the analysis below the Motion to Dismiss (#26) is *denied,* the Motion for Leave to File and Amicus Curiae Brief (#46) is *granted.* Defendant UBS' Motion to Dismiss (#28) is *dismissed as moot*. The Motion for Judicial Notice (#29) is *granted*

**BACKGROUND**

This case involves an alleged financial scandal in which approximately 130 individuals lost approximately $95 million when Defendants Southwest Exchange Inc. ("SWX") and Qualified Exchange Services ("QES") collapsed in January 2007. Plaintiffs allege that the scandal originated with the active, knowing, and wrongful participation of Defendant Citigroup Global Markets, Inc., Fka Salomon Smith Barney, Inc. ("Citigroup"), and went undetected for over two (2) years because of the participation of Citigroup, in an ongoing Ponzi scheme.

Defendants SWX and QES both were "qualified intermediaries" as definded in Treas. Reg. §1.1031(k)-1 to facilitate investors ("Exchangers") in completing Internal Revenue Service ("IRS") §1031 tax deferred exchanges ("Exchange"). (Plaintiff's Complaint, filed June 20, 2007, hereinafter referred to as "# 1-1", at ¶¶ , 14, 15, 16, 19, 29). Qualified intermediaries are required to deposit Exchangers funds pending the completion of their Exchange into either a "qualified escrow account" or a "qualified trust." (# 1-1, at ¶¶ 17, 18). At all applicable times SWX was licensed by Nevada as a qualified intermediary (# 1-1, at ¶33). Nevada requires qualified intermediaries to deposit Exchangers funds into "qualified escrow accounts," and provides that the Exchangers funds cannot be withdrawn from the escrow account without the written consent of both the qualified intermediary and the Exchanger. (# 1-1, at ¶¶ 21, 22). QES as an escrow holder could not withdraw Exchangers funds except to complete their Exchanges. (# 1-1, at ¶23). Both SWX and QES as escrow holders and trustees of the Exchangers' funds owed fiduciary duties to the Exchangers. (# 1-1, at ¶¶ 34)

Defendant P.J. DeMarigny ("DeMarigny"), an employee of Citigroup, was SWX's account representative at Defendant Citigroup's office in Las Vegas where Exchangers funds were deposited. (# 1-1, at ¶¶ 12, 29). Both DeMarigny and Citigroup (through DeMarigny and Bernard Schofield ("Schofield"), a Citigroup employee and manager of a second SWX account) knew that SWX was operating as a qualified exchanger and was required to deposit Exchangers funds in escrow or trust

accounts, and that to protect those funds they could not be withdrawn without the Exchangers written consent. (# 1-1, at ¶¶ 24, 30). Plaintiff allege that Defendants DeMarigny and Citigroup, knowingly and for financial gain, agreed to enter into a conspiracy with Defendants Donald McGhan ("McGhan"), Nikki Pomeroy ("Pomeroy"), SWX, and QES to improperly withdraw $47 Million of Exchangers funds in July 2004, without their consent, from the escrow and trust accounts maintained at Citigroup. This was done to enable McGhan to utilize those funds to finance other investments and personal lifestyles. (# 1-1, at ¶¶ 25-29, 31-38).

It is alleged that in order to hide the looting of $47 Million, Defendants SWX, McGhan, and Pomeroy, operated an ongoing conspiracy with DeMarigny and Citigroup, and later Defendant UBS which became a classic Ponzi scheme whereby later Exchangers funds were utilized by SWX to complete the Exchanges of the original Exchangers whose deposits had been withdrawn. (# 1-1, at ¶¶ 25-29, 31-38). To obtain more funds to continue to operate the Ponzi scheme, McGhan purchased QES and two other qualified intermediaries, and used their Exchangers deposits to complete SWX Exchangers' transactions. These transactions could not be completed because of the initial $47 Million theft. (# 1-1, at ¶ 44). When DeMarigny left his employment at Citigroup in July 2004, it is alleged again that Citigroup took no steps to affirmatively disclose or defeat the conspiracy and therefore did not exit the ongoing conspiracy. (# 1-1, at ¶67).

The Ponzi scheme collapsed in January 2007. Approximately one-hundred and thirty (130) individuals who had approximately $95 million on deposit with SWX, QES, and two other exchange companies purchased by McGhan entities were damaged when they could not complete their own Exchanges or obtain a refund of their funds. (# 1-1, at ¶¶ 45, 46, 47, 48).[1] The exchange agreement

---

[1] Several Exchangers filed individual lawsuits in Clark County District Court. (Complaint ¶ 5; the Sunset- Pecos LTD v. SWX, et al, Case No. 07-A-535439-B) Citigroup filed a motion to dismiss the individual lawsuits on many of the same grounds, including the Securities Litigation Uniform Standards Act ("SLUSA"). Clark County District Court Judge Elizabeth Gonzales denied Citigroup's motion. The

utilized by SWX contains a provision that Nevada law applies to all lawsuits and disputes. (# 1-1, at ¶21).

**ANALYSIS**

**I.    Standard for Dismissal**

Dismissal for failure to state a claim under Rule 12(b)(6) is proper only if it is beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the plaintiff. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996). Although courts assume the factual allegations to be true, courts should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). On a motion to dismiss, the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss under Rule 12(b)(6). *In re Stac Elecs.*, 89 F.3d at 1403.

**II.    SLUSA Does Not Bar Plaintiff's State-Based Claims.**

Defendants argue that SLUSA bars Plaintiffs state based claims; this is not so. SLUSA bars plaintiffs from maintaining, in any State or Federal court, a "covered class action" based upon state law that alleges "(1) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."

---

Court takes Judicial Notice of Citigroup's motion to dismiss, the Opposition filed by the Napa Plaintiffs, Citigroup's Reply and Judge Gonzales Order denying the motion.

1  U.S.C.A. § 78bb.  Defendant bears the burden of demonstrating that Plaintiff alleges the
2  misrepresentation of material facts or deceptive devices "in connection with" the purchase or sale
3  of a covered security.  *See Flardj v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 189 F.Supp.2d 14,
4  17-18 (S.D.N.Y. 2001).  Defendant cannot meet this burden.

5  Hawkes, as well as all clients of SWX and QES, did not purchase or sell securities because
6  they could not under IRC § 1031.  *See* 26 U.S.C. § 1031.  The misrepresentation and fraud which
7  injured Plaintiffs were unrelated to covered securities or the stock market.  Plaintiffs did not
8  purchase securities or rely on misrepresentations concerning securities or the stock market.
9  Therefore, the behavior and misrepresentations alleged in the Complaint do not fall under the
10 coverage of SLUSA.  The Supreme Court confirmed this limitation of SLUSA.  *SEC v. Zandford,*
11 535 U.S. 813, 822 122 S.Ct. 1899, 1904 (2002) (SLUSA only covers claims relating to fraudulent
12 schemes and wrongful conduct that "coincide[s] with the sale of securities").

13 As alleged in the Complaint, the bad act at issue in this case is the removal of funds by
14 Citigroup and co-Defendants, not what was done with the money after it was wrongfully removed
15 from the accounts.  Some of those funds may have found their way into securities, but this
16 connection to a security is too tenuous for the claims to be governed or precluded by SLUSA.  *See*
17 *Ambassador Hotel Co. v. Wei-Chuan Inv.,* 189 F.3d 1017, 1026 (9th Cir. 1999) (the fraud in question
18 must relate to the nature of the securities, such as the risk involved or some element of the securities
19 themselves); *Leykin v. AT&T Corp.,* 423 F.Supp.2d 229, 241 (S.D.N.Y. 2006) (wrongful conduct
20 is not related to the purchase or sale of a security when it is "merely incidental").  Fraud that is
21 "unattached to any particular purchase or sale, such as outright embezzlement from the clients
22 account" is not sufficiently connected to the purchase or sale of securities.  *Dabitt v. Merrill Lynch,*
23 *Pierce, Fenner & Smith, Inc.,* 395 F.3d 25, 27 92nd Cir. 2005) *rev'd on other grounds,* 126 S.Ct.

24

25

-5-

1503 92006) ("Dabit II") (*citing Zandford,* 535 U.S. at 820). Therefore, the Court concludes that Plaintiffs' claims are not barred by SLUSA.

**III.    Plaintiff's Standing to Bring the Claim Against Citigroup**

Based on the well-pled allegations of the Complaint, Citigroup may be held directly liable to Plaintiffs for its conduct relating to: (1) the wrongful conversion of $50,000,000 in SWX trust assets when SWX commingled the exchangers' 1031 funds at Citigroup making them vulnerable to further theft; (2) the injury to the resulting trust which commenced in June 2004, when DeMarigny helped McGhan loot over $50,000,000 in trust assets; and (3) DeMarigny's participation in McGhan's Ponzi scheme which commenced in July 2004, and as a matter of law, allegedly was done with the intent to cause the losses suffered by the 2006-07 Exchangers.

**A.    Imputation of knowledge**.

Under well established law, Citigroup possesses the collective knowledge of its officers, employees and agents, including the knowledge of Schofield (who knew the SWX trust assets were exchangers' funds) and DeMarigny, an active participant in the Ponzi scheme. *See U.S. v. bank of New England, N.A.,* 821 F.2d 844, 855-56 (1st Cir. 1987). Plaintiffs properly alleged the necessary knowledge of Citigroup's officers and employees to establish liability for the actions of Schofield and DeMarigny. Since *Bank of New England*, courts continue to allow the knowledge of agents and employees to be aggregated and imputed to the corporation. *See e.g., U.S. Sun-diamond Growers,* 964 F.Supp. 486, 491 n. 10 (D.D.C. 1997), *reversed on other grounds,* 329 U.S. App. D.C. 149, 138 F.3d 961 (D.C. Cir. 1998), *aff'd,* 526 U.S. 398, 119 S.Ct. 1402 (1992); *In re Worldcom, Inc. Sec. Litig.,* 352 F.Supp.2d 472 (S.D.N.Y. 2005).

**B.    Respondeat superior liability.**

As alleged by Plaintiffs the actions of Citigroup employees Schofield and DeMarigny harmed the trust and the beneficiaries of the trust. Under the theory of respondeat superior, Citigroup may

be held liable for the actions of its employees. *See New York Cent. & Hudson R.R. v. U.S.,* 212 U.S. 481, 494 (1909) (holding that "a corporation is held responsible for acts not within the agent's corporate power strictly construed, but which the agent had assumed to perform for the corporation when employing the corporate powers actually authorized, and in such cases there need be no written authority under seal or vote of the corporation in order to constitute the agency or to authorize the act"). If a corporate agent exercises the authority conferred upon him and acts within the course of his employment, the corporation is liable even if the act was unlawful or was done contrary to corporate policies. Citigroup may be held liable for the harm caused to the trust by DeMarigny and Schofield.

## CONCLUSION

Plaintiffs have sufficiently pled the underlying facts necessary to establish the elements of their claims against Citibank. Pursuant to the analysis above:

IT IS HEREBY ORDERED, the Motion to Dismiss (#26) is *denied;* the Motion for Leave to File and Amicus Curiae Brief (#46) is *granted.*

IT IS FURTHER ORDERED, Defendant UBS' Motion to Dismiss (#28) is *denied as moot,* the Motion for Judicial Notice (#29) is *granted.*

DATED: March 25, 2008

_____
ROBERT C. JONES
UNITED STATES DISTRICT COURT

(mr)